

ORIGINAL

JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

DAVID B. COUNTRYMAN (CSBN 226995)
Assistant United States Attorney

450 Golden Gate Avenue, 9th Floor
San Francisco, CA 94102
Telephone: 415.436.7303
Facsimile: 415.436.6748
Email: david.countryman@usdoj.gov

Attorneys for United States of America

FILED 08 MAY -6 PM 1:07

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>APPROXIMATELY $104,994 IN UNITED STATES CURRENCY,<br>Defendant. | CV 08 2331 JL<br>No. 08-<br>COMPLAINT FOR FORFEITURE |

NATURE OF THE ACTION

1. This is a judicial forfeiture action, as authorized by 21 U.S.C. § 881(a)(6), involving the seizure of defendant approximately $104,994 in United States Currency ("defendant $104,994") which was seized as money furnished or intended to be furnished by a person in exchange for a controlled substance, or money traceable to such an exchange, or money used or intended to be used to facilitate a violation Subchapter I, Chapter 13 of Title 21 United States Code.

JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355(a), and 21 U.S.C.

§ 881(a)(6).

3. This action is timely filed in accordance with 18 U.S.C. § 983(a)(3)(A).

4. Venue in this Court is proper because defendant $104,994 was seized in the Northern District of California. 28 U.S.C. §§ 1355(b) and 1395.

5. Intra-district venue is proper in the San Francisco Division within the Northern District of California.

PARTIES

6. Plaintiff is the United States of America.

7. Defendant is approximately $104,994 in United States Currency.

FACTS

8. On or about November 5, 2007, TSA agents discovered a large amount of United States Currency in the carry-on luggage of Todd Donald Dunphy, and TSA notified DEA.

9. On or about November 6, 2007, Special Agent ("S/A") Willie Byrd conducted a NCIC check on Dunphy, which revealed that Dunphy has two prior drug convictions.

10. On November 27, 2007, DEA received detailed information from a confidential informant regarding suspicious travel. Todd Donald Dunphy ("Dunphy") was traveling from Honolulu, Hawaii, to San Francisco International Airport ("SFO") on United Airlines Flight #72 with one piece of checked luggage. Dunphy had paid $449 in cash for a round-trip ticket from Honolulu to San Francisco on November 27, 2008, and he was scheduled to arrive at SFO on November 28, 2008, at approximately 2:33 p.m.

11. On November 28, 2007, United Airline flight #72 arrived at gate 80 at approximately 2:43 p.m. Agents from DEA Task Force 2 observed Dunphy deplane.

12. Dunphy was carrying a large black and red duffle bag and was walking at a very fast pace.

13. DEA Task Force 2 agents maintained foot surveillance as Dunphy went through the secured check point exit, proceeded past the escalators that lead downstairs to the baggage claim carousels, and proceeded up two escalators toward the Air Train platform.

14. S/A Willie Byrd and Task Force Agent ("TFA") Steve Maes approached Dunphy

and identified themselves. TFA Maes advised Dunphy that he was not under arrest and was free to go.

15. TFA Maes asked Dunphy if he would answer some questions and Dunphy said "yes."

16. TFA Maes asked Dunphy about his travel itinerary. Dunphy stated that he had arrived on a flight from Hawaii and was in the San Francisco Bay area to film a martial arts movie called Human Weapon. Dunphy stated the movie was being filmed in the East Bay area.

17. When asked, Dunphy was unable to provide agents with information concerning the date, time, or location of the filming.

18. TFA Maes asked Dunphy if he had been arrested in the past. Dunphy said "no."

19. Dunphy subsequently admitted that he had been arrested on a marijuana charge.

20. TFA Maes asked Dunphy if he had been arrested for any other crime. Dunphy said "no."

21. TFA Maes asked Dunphy if he currently had illegal drugs or a large amount of U.S. Currency in his possession. Dunphy said "no."

22. TFA Maes and S/A Byrd informed Dunphy that they detected the odor of marijuana, and they again asked Dunphy if he had any marijuana, illegal drugs, or large amounts of currency in his possession. Dunphy said "no."

23. TFA Maes and S/A Byrd told Dunphy that the odor of marijuana was strong and was emanating from his duffle bag. TFA Maes asked Dunphy for consent to search his person and his luggage for U.S. currency or illegal narcotics. Dunphy said "yes."

24. S/A Byrd first searched Dunphy's person and did not locate any illegal drugs or large amounts of U.S. Currency.

25. S/A Byrd then searched the main compartment of Dunphy's fanny pack and found a bundle of U.S. Currency bound with rubber bands. TFA Maes asked Dunphy how much money he had in his possession, and Dunphy told him "four thousand."

26. S/A Byrd searched the secondary compartment of Dunphy's fanny pack and found approximately 43.3 grams of marijuana.

27. S/A Byrd continued by searching the main compartment of Dunphy's duffle bag and found two unaddressed large white Fed Ex fiber envelopes. S/A Byrd opened both Fed Ex envelopes and found that each contained numerous large bundles of U.S. Currency bound with rubber bands.

28. S/A Byrd opened the side compartment of Dunphy's duffle bag and found a third large unaddressed white Fed Ex fiber envelope that was already open. Inside the envelop, S/A Byrd observed numerous large bundles of U.S. Currency bound with rubber bands.

29. TFA Maes asked Dunphy how much money he had in his possession, and Dunphy told him "hundred thousand."

30. The packaging of defendant $104,994 is consistent with that used for, or from, the sale of illegal controlled substances.

31. TFA Maes inquired about the U.S. Currency. Dunphy explained that he was a model/actor/property owner, and he told the agents that the money was for the purchase of land in Laytonville, CA.

32. S/A Byrd asked Dunphy how much money he declared on his taxes last year, and Dunphy stated "My CPA does my taxes; I don't know." S/A Byrd asked Dunphy how much money he made a year. Dunphy stated "I don't know, but I made a lot."

33. S/A Byrd told Dunphy that he was going to seize the currency pending further investigation. Dunphy was given a receipt for the money.

34. At approximately 3:15 p.m. TFA Marty Mahon cleared an unoccupied area of the airport with his certified narcotic detection canine "Dugan." TFA Mahon secreted defendant $104,994 in the unoccupied area and had canine Dugan perform a systematic search of the area. During the search, Canine Dugan made a positive alert to defendant $104,994, which was an indication to TFA Mahon that the odor or narcotics was emanating from defendant $104,994. Canine Dugan is certified to detect marijuana, methamphetamine, cocaine, and heroin.

35. The denominations of the defendant $104,994 were: 400 x $100 dollar bills; 156 x $50 dollar bills; 2,800 x $20 dollar bills; 97 x $10 dollar bills; 44 x $5 dollar bills; 4 x $1 dollar bills.

36. The denominations of defendant $104,994 are consistent with those used for, or from, the sale of illegal controlled substances.

37. On or about April 5, 2008, agents with the Hawaii Airport Task Force executed a federal search warrant at Dunphy's residence at 2166 Halakau St., Hololulu, HI. A search of the premises revealed approximately three pounds of processed marijuana, numerous plastic bags containing drug residue, and approximately $242,906 in U.S. Currency, which is currently pending administrative forfeiture.

38. On or about April 22, 2008, Dunphy and David Saccullo were arrested for conspiracy to distribute more than fifteen (15) pounds of marijuana.

39. Saccullo admitted that in March 2008 he had met Dunphy in California and purchased 30 pounds of marijuana from a man named "Red." Saccullo admitted that he and Dunphy had packaged the marijuana and shipped it to an address in Hawaii, which was provided by Dunphy.

40. Saccullo admitted that Dunphy had paid him $10,000 for assisting Dunphy with a total of three shipments that were made between March and April 2008.

41. Saccullo admitted that in April 2008, he met "Red" for a second time at Dunphy's direction. Saccullo admitted that he packaged 15-20 pounds of marijuana and shipped it to Honolulu, HI.

42. Saccullo stated that he paid $40,000 for the marijuana and would be reimbursed by Dunphy.

43. A federal criminal complaint was filed against Dunphy and Saccullo on April 23, 2008.

44. Due to the totality of the circumstances, defendant $104,994 in United States Currency was seized as money furnished or intended to be furnished by a person in exchange for a controlled substance, or traceable to such an exchange, or money used or intended to be used to facilitate a violation of Subchapter I, Chapter 13 of Title 21 United States Code. Specifically, based on the training and experience of the Task Force agents, the totality of the circumstances on which the seizure was based included the denominations of the currency, packaging of the

currency in multiple bundles with rubber bands, no verification of the source of the currency, prior drug arrests and drug convictions, untruthful statements to agents concerning his prior drug arrest record, untruthful statements about his possession of drugs, untruthful statements about his possession of large amounts of currency, differing statements about his employment to law enforcement authorities, the positive canine alert, airline tickets purchased in cash on the day before travel to a drug source city. Additionally, the circumstances surrounding the subsequent search of Dunphy's house--including the discovery and seizure of large quantities of marijuana, drug paraphernalia, and U.S. Currency--the arrest of Dunphy for conspiracy to distribute more than 15 pounds of marijuana, and the admissions of his alleged co-conspirator all lend further support to the conclusion that the defendant $104,994 was furnished or intended to be furnished by a person in exchange for a controlled substance, or traceable to such an exchange, or money used or intended to be used to facilitate a violation of Subchapter I, Chapter 13 of Title 21 United States Code.

VIOLATION

45. The United States incorporates by reference the allegations in paragraphs one through 44 as though fully set forth.

46. Section 881(a)(6) of Title 21 of the United States Code, provides for the forfeiture of all money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of Subchapter I, Chapter 13 of Title 21 United States Code, all proceeds traceable to such an exchange and all money used or intended to be used to facilitate any violation of Subchapter I, Chapter 13 of Title 21 United States Code.

47. In light of the foregoing, defendant $104,994 in United States Currency is subject to judicial forfeiture.

* * * * *

WHEREFORE, plaintiff United States of America requests that due process issue to enforce the forfeiture of defendant $104,994; that notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment of forfeiture be entered; that

the Court enter judgment forfeiting defendant $104,994; and that the United States be awarded such other relief as may be proper and just.

Respectfully submitted,

JOSEPH P. RUSSONIELLO
United States Attorney

Dated: May 5, 2008

STEPHANIE M. HINDS
Assistant United States Attorney

Assigned to: AUSA David Countryman

VERIFICATION

I, Willie Byrd, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration Task Force, United States Department of Justice, and am the case agent. As such, I am familiar with the facts, and the investigation leading to the filing of this Complaint for Forfeiture.

2. I have read the Complaint and believe the allegations contained in it to be true.

* * * * *

I declare under penalty of perjury that the foregoing is true and correct. Executed this 05 day of MAY, 2008, at San Francisco International Airport, in California.

WILLIE BYRD
Special Agent
Drug Enforcement Administration